IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| ELAINE TIPTON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:17-03179-CV-RK |
| | ) | |
| | ) | |
| JEFF SESSIONS, ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion to Dismiss or for Summary Judgment"). (Doc. 19.) Plaintiff alleges she was harassed and retaliated against while working as a dental hygienist in a federal prison. (Doc. 1.) Defendant contends Plaintiff was not a federal employee but an independent contractor who cannot recover under federal antidiscrimination laws. (Doc. 19.) For the reasons below, Defendant's Motion to Dismiss or for Summary Judgment (doc. 19) is **DENIED**.

### Background

Plaintiff worked at the United States Medical Center for Federal Prisoners in Springfield, Missouri, as a part-time dental hygienist. She worked there for approximately six years under two different contractors, the most recent being Compass Medical Provider, LLC ("Compass"). She alleges that her supervisors at the prison harassed her based on her gender, sexual orientation, age, and religion, and that Defendant retaliated against her for filing a formal complaint. In February 2014, Defendant hired a full-time dental hygienist, and Plaintiff was terminated.

After pursuing administrative relief with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed her Complaint in this Court under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 (the "ADEA"). Plaintiff alleges that, at all relevant times, she was a joint employee of Compass and Defendant.

Prior to the close of discovery, Defendant filed its Motion to Dismiss or for Summary Judgment. (Docs. 14, 19.) Defendant requests dismissal or summary judgment on the theory that

Congress did not waive sovereign immunity for discrimination claims made by independent contractors, only federal employees. Plaintiff filed an opposition to the request for dismissal but asked for additional time to respond to the summary judgment motion following further discovery. (Doc. 20.) Defendant then filed a reply. (Doc. 21.) At a September 21, 2018 status conference, the Court stayed discovery pending a ruling on the present motion. (Doc. 24.)

**Discussion**

Title VII and the ADEA cover only employees, not independent contractors. *Glascock v. Linn Cnty. Emergency Med., PC*, 698 F.3d 695, 698 (8th Cir. 2012) (Title VII); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 761 (8th Cir. 2014) (ADEA). To determine whether a person is an employee or an independent contractor, the Court must engage in a "fact-intensive" inquiry. *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 484 (8th Cir. 2000). The "primary consideration is the hiring party's right to control the manner and means by which a task is accomplished." *Id.* However, the Court must consider "'all aspects of the working relationship.'" *Id.* at 483 (citation omitted). This includes:

(1) The right to control the manner and means by which the product is accomplished;
(2) the skill required;
(3) the source of the instrumentalities and tools;
(4) the location of the work;
(5) the duration of the relationship between the parties;
(6) whether the hiring party has the right to assign additional projects to the hired party;
(7) the extent of the hired party's discretion over when and how long to work;
(8) the method of payment;
(9) the hired party's role in hiring and paying assistants;
(10) whether the work is part of the regular business of the hiring party;
(11) whether the hiring party is in business;
(12) the provision of employee benefits;
(13) the tax treatment of the hired party; and
(14) the "economic realities" of the relationship between the parties, including how the work relationship may be terminated and whether the hired party receives leave.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992); *Glascock*, 698 F.3d at 699; *Schwieger*, 207 F.3d at 484.

## I. Motion to Dismiss

As a preliminary matter, the Court will construe Defendant's Rule 12(b)(6) motion to dismiss as a request for judgment on the pleadings under Rule 12(c) because Defendant had already filed its Answer when it filed the motion. *See Z.J. v. Kansas City, Mo. Bd. of Police Comm'rs*, No. 4:15-CV-00621-FJG, 2016 WL 4126569, at *2 (W.D. Mo. Aug. 2, 2016). This distinction is "purely formal" because the Court reviews both types of motions under the same standard. *Id.* (citation omitted). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quotation marks and citation omitted). The Complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, the Complaint contains sufficient allegations that Plaintiff was a joint employee of Compass and Defendant. *See Hunt v. State of Mo., Dep't of Corr.*, 297 F.3d 735, 742 (8th Cir. 2002) (holding that Title VII applies to joint employees). Plaintiff alleges that she worked at the prison facility, that she worked there for six years, and that the position was part time for 20 years before she was terminated. (Doc. 1 ¶¶ 1, 26.) She also alleges that Defendant was her "joint employer throughout her employment because [Defendant] controlled nearly all aspects of her employment, . . . supervised all her day to day duties, oversaw and reviewed her patient care, directed her daily work activities, scheduled her patients and her work hours/breaks, reviewed her performance, was responsible to oversee any disciplinary actions and provided her the equipment to do her job." (Doc. 1 ¶ 7.) According to the Complaint, Compass "never even visited the facility." (*Id.*) These allegations, if true, would allow the Court to draw a reasonable inference that Plaintiff was a joint employee of Defendant. Accordingly, the Court will deny Defendant's request for judgment on the pleadings.

## II. Motion for Summary Judgment

"Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (quotation marks and citations omitted). In ruling on a motion for summary judgment, the Court views the evidence "in

the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Id.* (quotation mark and citation omitted). At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1). The nonmovant must then "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Here, Defendant has not met its burden of showing that Plaintiff was an independent contractor. Summary judgment would be premature on the current record.

**(1)   Control**

Defendant relies primarily on the contract it had with Compass. (Docs. 19-1, 19-2.) The contract states that Compass "will not be subject to Government supervision, except for security related matters," and that Defendant "retains no control over the medical, professional aspects of services rendered." (Doc. 19-2.) However, the contract also shows that Defendant had discretion to control Plaintiff's work schedule, the scheduling of sessions with inmates, the guidelines she was bound to follow, and her performance evaluations. (Doc. 19-1.) Further, in a deposition excerpt submitted by Defendant, the dentist who served as Defendant's representative stated that his role with respect to Plaintiff was "[t]o make sure [she] carried out her job as a hygienist" and "functioned as a hygienist." (Doc. 19-4.) He testified that he was the person "primarily responsible for directing [her] day-to-day work . . . [s]ince [he] supervised the clinic." (*Id.*) According to the dentist, "functionally or realistically, [he] supervised her." (*Id.*)

Defendant argues that "'control' is not an especially helpful consideration where medical services are at issue." (Doc. 19 at 10.) In *Glascock*, the Eighth Circuit stated that "the issue of control is less useful in the context of emergency room physicians than in some other settings because a hospital 'must assert a degree of conflicting control over every doctor's work . . . to discharge its own professional responsibility to patients,' regardless [of] whether the physician is an employee or independent contractor." 698 F.3d at 698 (quoting *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997) (The court in *Cilecek* continued: "More enlightening is the control involved in deciding when a doctor performs his services, the number of hours he performs them, and the administrative details incident to his

4

professional services.")). The Eighth Circuit ultimately held in *Glascock* that, assuming control was a relevant consideration, the record was inconclusive on the issue of control. 698 F.3d at 698; *see also Alexander*, 768 F.3d at 762 (holding that the control factor weighed in favor of independent contractor status because the hospital did not control either the manner of a pathologist's performance or the schedule of work). In contrast to *Glascock* and *Alexander*, the Eighth Circuit held in *Hunt* that nurses working in a Missouri state prison were employees of the Missouri Department of Corrections ("DOC") due in part to the control it exercised over their "working terms and conditions." 297 F.3d at 742-43.

Here, Defendant has not shown how Plaintiff, a dental hygienist, is more like the physicians in *Glascock* and *Alexander* than the nurses in *Hunt*. The evidence currently before the Court suggests Defendant controlled both (1) the manner of Plaintiff's professional performance as a hygienist by employing a dentist to supervise her and (2) the scheduling and administrative aspects of her job. On the current record, this factor weighs in favor of employee status.

### (2) Degree of Skill Required

The contract states that Plaintiff must have a bachelor's degree in Dental Hygiene or be a graduate from an accredited Dental Hygiene program; hold a valid Dental Hygiene license issued by any state; have a minimum of three years of experience; and be able to perform the services specified in the contract. (Doc. 19-1 at 1.) Defendant has not briefed how or whether this experience level is high enough to weigh in favor of independent contractor status. *Compare Alexander*, 768 F.3d at 763 ("The level of skill required . . . [was] not indicative of employee status because all hospital medical staff are skilled . . . ."), *with Schwieger*, 207 F.3d at 485 (holding that the high skill level required for an insurance sales position weighed in favor of independent contractor status). The current record is inconclusive on this factor.

### (3) Sources of the Instrumentalities and Tools

Defendant provided the supplies for the job. (Doc. 19-1 at 1.) Therefore, this factor weighs in favor of employee status. *See Hunt*, 297 F.3d at 742-43 (holding that this factor weighed in favor of employee status because the DOC purchased and provided the tools and supplies for the nurses); *Allen v. U.S. Sec'y of Def.*, No. 4:10-cv-1928-FRB, 2012 WL 401062, at *5 (E.D. Mo. Feb. 8, 2012) (same for an administrative assistant hired to work for the National Geospatial Intelligence Agency).

5

**(4) Work Location**

This factor appears to have neutral weight because providing dental hygiene services to inmates must be performed on-site. *Alexander*, 768 F.3d at 763 (holding that this factor was "inconclusive or of little relevance" because all hospital medical staff must work inside the hospital); *Zahner v. Tower Rock Stone Co.*, No. 4:10-cv-01756-HEA, 2012 WL 3065504, at *4 (E.D. Mo. July 27, 2012) (holding that this factor was neutral for a cleaning service because "the nature of Plaintiff's work required that she undertake the cleaning tasks on-site.") Defendant did not brief this issue, and the current record is inconclusive on this factor.

**(5) The Duration of the Relationship Between the Parties**

The parties' relationship lasted six years, but the contract's term was for only one year. The contract was renewable up to four times, but Defendant had unilateral discretion over whether to renew. The record does not contain any evidence about what Plaintiff's expectations were regarding the duration of her employment. *Compare Glascock*, 698 F.3d at 699 (holding that the worker's expectation of long-term employment weighed in favor of employee status despite a one-year contract term), *with Zahner*, 2012 WL 3065504, at *4 (holding that the at-will nature of employment weighed in favor of independent contractor status on this factor despite a twelve-year relationship). Defendant did not brief this issue. The current record is inconclusive on this factor.

**(6) Hiring Party's Right to Assign Additional Projects**

The contract contains a list of duties Plaintiff was required to perform. (Doc. 19-1 at 1.) It also states: "This list is not all inclusive." (Doc. 19-1 at 1.) This suggests Defendant was able to assign additional projects to Plaintiff. Defendant did not brief this issue or attempt to show that in reality, it did not have the right to assign additional projects. The current record is inconclusive on this factor.

**(7) Worker's Discretion over When and How Long to Work**

The contract shows that Defendant had discretion to control Plaintiff's work schedule and the scheduling of sessions with inmates. (Doc. 19-1 at 4.) Therefore, on the current record, this factor weighs in favor of employee status. *Hunt*, 297 F.3d at 742-43 (holding that this factor weighed in favor of employee status because the prison nurses could not set their own schedules); *Allen*, 2012 WL 401062, at *5 (same for an administrative assistant).

**(8)   Payment**

Plaintiff was paid by Compass, not Defendant. Therefore, on the current record, this factor weighs in favor of independent contractor status. *See Schwieger*, 207 F.3d at 487 (holding that this factor weighed in favor of independent contractor status because the insurance agent was not paid by the company but solely through commission).

**(9)   The Worker's Role in Hiring and Paying Assistants**

The contract is silent on this issue, and Defendant did not brief it. The current record is inconclusive on this factor.

**(10)   Whether the Work Is Part of the Regular Business of the Hiring Party**

It is unclear whether providing inmates with dental hygiene services is part of Defendant's "regular" business of operating a prison. *Compare Schwieger*, 207 F.3d at 486 (holding that selling insurance is part of an insurance company's regular business), *with Zahner*, 2012 WL 3065504, at *5 (holding that office cleaning is not part of a rock quarry's regular business). Defendant did not brief this issue. The current record is inconclusive on this factor.

**(11)   Whether the Hiring Party Is in Business**

Defendant is a governmental entity who is not in private "business." However, governmental entities are equally capable of hiring both employees and independent contractors. *See Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, EEOC Notice No. 915.002 (Dec. 3, 1997), https://www.eeoc.gov/policy/docs/conting.html (stating that the "principles regarding joint employer coverage are the same" for private entities and federal agencies). Defendant has not shown how the fact that it is a governmental entity that does not conduct private business has any bearing on whether Plaintiff should be treated as an independent contractor or an employee under the discrimination laws. The current record is inconclusive on this factor.

**(12)   Benefits**

Plaintiff did not receive any retirement or healthcare benefits from Defendant. Therefore, this factor weighs in favor of independent contractor status. *See Alexander*, 768 F.3d at 762 (holding that the lack of benefits weighed in favor of independent contractor status); *Glascock*, 698 F.3d at 699 (same).

**(13) Tax Treatment**

The contract states that, if awarded to an individual, Defendant would treat that person as a "common law employee" and withhold federal payroll taxes. (Doc. 19-1 at 4.) However, the contract was awarded to Compass, not Plaintiff as an individual. The record is silent about whether Defendant withheld and reported Plaintiff's taxes, whether Compass did this, or whether Plaintiff was responsible for using a self-employment reporting mechanism. *Zahner*, 2012 WL 3065504 at *5 (holding that the plaintiff's self-employed tax status "strongly suggest[ed]" independent contractor status). The current record is inconclusive on this factor.

**(14) Economic Realities**

The fact that the contract states that it creates an independent contractor relationship and not an employer-employee relationship weighs in favor of independent contractor status. *Glascock*, 698 F.3d at 699. So does the fact that Defendant did not grant leave. *Id.*; *Schwieger*, 207 F.3d at 486. However, it is unclear whether the method of termination weighs in favor of independent contractor status. Although the contract does not state that it is terminable at will, it does allow Defendant unilateral discretion not to renew after the first one-year term. *See Glascock*, 698 F.3d at 699 (holding that the at-will nature of employment weighed in favor of independent contractor status); *Schwieger*, 207 F.3d at 486 (same). Likewise, it is unclear whether Plaintiff could or did work as a dental hygienist elsewhere during the relevant time. *See Alexander*, 768 F.3d at 762 (holding that the fact that a pathologist held other medical employment weighed in favor of independent contractor status).

In summary, the following issues appear to weigh in favor of independent contractor status:

- Plaintiff was paid by Compass, not Defendant (factor #8);
- Plaintiff did not receive benefits from Defendant (factor #12);
- the contract states it creates an independent contractor relationship (factor #14); and
- Defendant did not provide for leave (factor #14).

The following issues appear to weigh in favor of employee status on the current record:

- Defendant controlled the manner and means of work (factor #1);
- Defendant provided the tools for the job (factor #3); and
- Defendant controlled Plaintiff's work schedule (factor #7).

The remaining issues have not been addressed by Defendant and are currently inconclusive as to whether they weigh in favor of independent contractor status:

8

- the degree of skill required (factor #2);
- the work location (factor #4);
- the duration of the relationship (factor #5);
- Defendant's right to assign additional tasks (factor #6);
- Defendant's role in hiring and paying assistants (factor #9);
- whether the work is part of Defendant's regular business (factor #10);
- how the fact that Defendant is not in "business" affects the analysis (factor #11);
- Plaintiff's tax status (factor #13);
- the mechanism for termination (factor #14); and
- whether Plaintiff could have or did work as a dental hygienist elsewhere during the relevant time (factor #14).

On the current record, the Court cannot say there is no genuine issue of material fact that Plaintiff was an independent contractor.[1]

**III. Discovery Stay and Scheduling Order Deadlines**

In light of the Court's ruling on Defendant's motion, the stay entered at the September 21, 2018 status conference is lifted. Given that the current discovery deadline has passed, the Court directs counsel to confer and submit a joint proposed First Amended Scheduling Order specifying new discovery and dispositive motion deadlines by November 16, 2018.

**Conclusion**

Accordingly, the Court **ORDERS** as follows:

1) Defendant's Motion to Dismiss or for Summary Judgment (doc. 19) is **DENIED without prejudice** to pursuing summary judgment following further discovery.
2) The stay of discovery is **LIFTED**.
3) The parties shall submit a joint proposed First Amended Scheduling Order by November 27, 2018.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
UNITED STATES DISTRICT COURT

DATED: November 13, 2018

---

[1] Accordingly, the Court need not address Defendant's argument that its sovereign immunity defense is a jurisdictional issue that cannot be waived, as opposed to a merits issue under *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).