**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ELAINE TIPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:17-03179-CV-RK |
| | ) | |
| WILLIAM BARR, ATTORNEY | ) | |
| GENERAL, U.S. DEPARTMENT OF | ) | |
| JUSTICE | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motions for Summary Judgment (Docs. 39 and 49) and Plaintiff's Motion for Summary Judgment (Doc. 53.) The motions are fully briefed. (Docs. 40, 47, 48, 49, 53, 56, 57, 58, 59.) After careful consideration, and for the reasons below, Defendant's Motion for Summary Judgment (Doc. 39) is **GRANTED**. Plaintiff's Motion for Summary Judgment is **DENIED**. As such the case is **DISMISSED**.

### I.    Background

Plaintiff filed her complaint against Defendant Jeff Sessions (now William Barr), Attorney General, U.S. Department of Justice on June 16, 2017. (Doc. 1.) Plaintiff worked at the United States Medical Center for Federal Prisoners ("USMCFP") in Springfield, Missouri, as a part-time dental hygienist. She worked there for approximately five years and nine months (approximately from January 2009-September 2014) under two different contractors. Plaintiff initially worked at the USMCFP as a contract worker for a business named Interactive Medical Specialists ("IMS"). During her last year (2013-2014) at the USMCFP, Plaintiff worked under Compass Medical Provider, LLC ("Compass"). Compass had contracted with the Bureau of Prisons ("BOP") to provide part-time dental hygienist services at the USMCFP with an effective contract start date of October 1, 2013 (the "Compass contract"). The negotiated contract between Compass and the BOP included one base year period, with four possible 12-month options for renewal. The option of renewal was to be exercised at the discretion of the BOP. The Compass contract stated, "[t]he service does not constitute an employer/employee relationship." (Doc. 40-4.) Additionally, the parties agree that Plaintiff had a right of first refusal pursuant to Exec. Order No. 13,495, 74 Fed.

Reg. 6103 (January 30, 2009) due to her then current contract work under the IMS contract at the USMCFP. (Docs. 47-4, 48.)

In her Complaint, Plaintiff alleges that her supervisors at the prison harassed her based on her gender, sexual orientation, age, and religion, and Defendant retaliated against her for filing a formal complaint. Specifically, in November 2013, Plaintiff filed complaints with Defendant, alleging she had been harassed by Defendant's employees. Four days after filing her complaints, an email from Freelon Payton stated, "Warden Sanders believes it would be in the best interest of the government to have [Plaintiff] replaced if she does not feel safe working in her current environment." (Doc. 47-2.) Further, prior to filing her complaint, Plaintiff could eat in the officers' cafeteria, have a Groupwise email account, and take OSHA mandated training at the prison. (Docs. 47-1 and 47-4.) Those privileges were taken away several months after Plaintiff made complaints to Defendant's employees. Defendant contends however, that they took such action only after supervising contract specialist Christy Bruner became aware that Plaintiff was using privileges she should not have had as a contract worker. Then, in February 2014, Defendant chose not to renew the Compass contract and decided to hire a full-time dental hygienist instead. The Compass contract was terminated, which then eliminated Plaintiff's position. After pursuing administrative relief with the Equal Employment Opportunity Commission ("EEOC"), with no decision being issued, Plaintiff filed her Complaint in this Court under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 (the "ADEA"). Plaintiff alleges that at all relevant times she was a joint employee of Compass and Defendant.

## II.    Legal Standard

"Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (quotation marks and citations omitted). In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Id.* (quotation mark and citation omitted). At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1). The nonmovant must then "present affirmative evidence in order

to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

The parties raise several issues in the present motions.  The first issue concerns Plaintiff's employment status.  Defendant previously filed a Motion to Dismiss, or in the alternative a Motion for Summary Judgment.  (Doc. 19.)  The Court denied Defendant's motion without prejudice. (Doc. 25.)  In that order the Court, noted "[o]n the current record, the Court cannot say there is no genuine issue of material fact that Plaintiff was an independent contractor."  (*Id.*)  While the briefing and discovery cited is more extensive with the present motions, the central issue remains the same: was Plaintiff an employee or an independent contractor for the USMCFP?  The second issue concerns the merits of Plaintiff's Title VII claim.  Because the Court will grant Defendant's motion concerning the first issue, the Court need not address the merits of Plaintiff's complaint.

Title VII and the ADEA cover only employees, not independent contractors. *Glascock v. Linn Cnty. Emergency Med., PC*, 698 F.3d 695, 698 (8th Cir. 2012) (Title VII); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 761 (8th Cir. 2014) (ADEA).  "Whether a hired party is an independent contractor or employee is an appropriate question for summary judgment."  *Glascock*, 698 F.3d at 698; *see also Estate of Mathis by Manley v. Sears Mfg. Co.*, No. 3:12-CV-00006-CFB, 2014 WL 12575721, at *3 (S.D. Iowa Jan. 9, 2014) (determining issue of employment status at summary judgment stage).  To determine whether a person is an employee or an independent contractor, the Court must engage in a "fact-intensive" inquiry. *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 484 (8th Cir. 2000).  The "primary consideration is the hiring party's right to control the manner and means by which a task is accomplished."  *Id.*  However, the Court must consider "'all aspects of the working relationship.'"  *Id.* at 483 (citation omitted).  This includes:

(1)    The right to control the manner and means by which the product is accomplished;

(2)    the skill required;

(3)    the source of the instrumentalities and tools;

(4)    the location of the work;

(5)    the duration of the relationship between the parties;

(6)    whether the hiring party has the right to assign additional projects to the hired party;

(7)    the extent of the hired party's discretion over when and how long to work;

(8)    the method of payment;

(9)    the hired party's role in hiring and paying assistants;

(10)   whether the work is part of the regular business of the hiring party;

(11)   whether the hiring party is in business;

(12)   the provision of employee benefits;

(13)   the tax treatment of the hired party; and

(14)   the "economic realities" of the relationship between the parties, including how the work relationship may be terminated and whether the hired party receives leave.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992); *Glascock*, 698 F.3d at 699; *Schwieger*, 207 F.3d at 484.

### (1)    Control

Defendant relies primarily on the terms of the contract it had with Compass. (*See* Docs. 40-2, 40-4.) The Compass contract states that Compass "will not be subject to Government supervision, except for security related matters," and that Defendant "retains no control over the medical, professional aspects of services rendered." (Doc. 40-4.) However, the contract also shows that Defendant had discretion to control Plaintiff's work schedule, the scheduling of sessions with inmates, the guidelines she was bound to follow, and her performance evaluations. (Doc. 40-4.) Further, in a deposition excerpt submitted by Plaintiff, Dr. Patrick McDermott, the dentist who oversaw Defendant's dental operations at the prison for more than 20 years, stated that his role with respect to Plaintiff was "[t]o make sure [she] carried out her job as a hygienist" and "functioned as a hygienist." (Doc. 47-1.) He testified that he was the person "primarily responsible for directing [her] day-to-day work . . . [s]ince [he] supervised the clinic." (*Id.*) According to Dr. McDermott, "functionally or realistically, [he] supervised her." (*Id.*) Thus, it appears Defendant controlled many aspects of Plaintiff's work.

Defendant, however, argues that "'control' is not an especially helpful consideration where medical services are at issue." (Doc. 40 at 9.) In *Glascock*, the Eighth Circuit stated that "the issue of control is less useful in the context of emergency room physicians than in some other settings because a hospital 'must assert a degree of conflicting control over every doctor's work . . . to discharge its own professional responsibility to patients,' regardless [of] whether the physician is an employee or independent contractor." 698 F.3d at 698 (quoting

*Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997). The Eighth Circuit ultimately held in *Glascock* that, assuming control was a relevant consideration, the record was inconclusive on the issue of control. 698 F.3d at 698. The Eighth Circuit has also held that the issue of control is inconclusive even where "the hiring party provided training courses, urged its workers to keep regular business hours, and regularly reviewed its workers' 'profitability, dress, and attitude.'" *Id.* (citing *Schwieger*, 207 F.3d at 484-85).

In contrast to *Glascock*, the Eighth Circuit held, in *Hunt*, that the district court did not err in finding nurses who worked in a Missouri state prison were employees of the Missouri Department of Corrections ("DOC"). 297 F.3d at 742- 43. This holding was due in part to the control the Missouri DOC exercised over the nurses' "working terms and conditions." *Id.* While this case has factual similarities to *Hunt*, it is less persuasive for a few reasons. One, the Eighth Circuit, both in *Glascock* and *Alexander*, considered the nature of the work performed and the degree of control that would be required to be exerted over a person's work regardless of whether that person was an employee or independent contractor. 698 F.3d at 698; 768 F.3d at 762. Like in those cases, because of the nature of the work performed, Defendant was required to exert a certain amount of control over Plaintiff. Specifically, Plaintiff's work as a dental hygienist, regardless of where she worked, required supervision and control by a dentist. Two, because the Plaintiff worked at a medical prison, a certain degree of supervision, coordination, and control was necessary to maintain a secure prison environment. Three, unlike in this case, the plaintiffs in *Hunt* were contacted, interviewed, and hired by a DOC employee. 119 F. Supp.2d 996, 998 (W.D. Mo. 2000). Thus, given the context of Plaintiff's work, the extent of control exercised is not necessarily indicative of Plaintiff's employment status. Therefore, the Court finds this factor to be inconclusive. *See Glascock*, 698 F.3d at 698; *Schwieger*, 207 F.3d at 485.

### (2) Degree of Skill Required

Plaintiff was required to have a bachelor's degree in dental hygiene or be a graduate from an accredited Dental Hygiene program; hold a valid Dental Hygiene license issued by any state; have a minimum of three years of experience; and be able to perform the services specified in the contract. (Doc. 40-3, p.1.) Because all dental hygienists in Missouri are required to have a certain level of skill and education, this factor holds neutral weight. *Compare Alexander*, 768 F.3d at 763 ("The level of skill required . . . [was] not indicative of employee status because all hospital

medical staff are skilled."), *with Schwieger*, 207 F.3d at 485 (holding that the high skill level required for an insurance sales position weighed in favor of independent contractor status).

### (3) Sources of the Instrumentalities and Tools

Defendant provided the supplies to Plaintiff necessary to complete her work. (Doc. 40- 1, p. 2.) Defendant argues this should weigh in favor of independent contractor status because every dentist provides the tools necessary for a hygienist to do their job and Plaintiff could not have supplied the tools because of the secure nature of the facility. (Doc. 40, p. 13.) The court in *Hunt*, however, found this factor to weigh in favor of employee status. 297 F.3d at 742- 43 (holding that this factor weighed in favor of employee status because the DOC purchased and provided the tools and supplies for the nurses). While this factor does favor employee status, the weight of this factor is largely diminished because of the location of Plaintiff's work and the secure nature of the facility. *See Alexander*, 768 F.3d at 762 (finding plaintiff to be an independent contractor even though plaintiff was provided equipment, supplies, and staff). Because of the secure nature of the facility, even if Plaintiff had desired, she could not have provided her own instruments or tools. Therefore, this factor weighs slightly in favor of employee status.

### (4) Work Location

This factor appears to have neutral weight because providing dental hygiene services to inmates must be performed on-site. *Alexander*, 768 F.3d at 763 (holding that this factor was "inconclusive or of little relevance" because all hospital medical staff must work inside the hospital); *Zahner v. Tower Rock Stone Co.*, No. 4:10-cv-01756-HEA, 2012 WL 3065504, at *4 (E.D. Mo. July 27, 2012) (holding that this factor was neutral for a cleaning service because "the nature of Plaintiff's work required that she undertake the cleaning tasks on-site.") Thus, because Plaintiff was required to work on-site, this factor holds neutral weight.

### (5) The Duration of the Relationship Between the Parties

The parties' relationship lasted almost six years, but the Compass contract's term was for only one year. The contract was renewable up to four times, but Defendant had unilateral discretion over whether to renew. Defendant argues Plaintiff's relationship with Compass was limited to one year, with the options of renewal which were not exercised. However, this factor concerns the relationship between Plaintiff and Defendant, not Plaintiff and Compass or even the Defendant and Compass. The uncontroverted facts suggest Plaintiff worked at Defendant's facility for nearly six years and survived two different contracted entities. Additionally, a Plaintiff's

expectation of long-term employment weighs in favor of employee status. *Glascock*, 698 F.3d at 699 (holding that the worker's expectation of long-term employment weighed in favor of employee status despite a one-year contract term, affirming summary judgment on other grounds). Here, Defendant had utilized a single part-time, contracted hygienist for at least 20 years prior to Plaintiff making her complaints. Plaintiff understood this fact, believed she was doing a good job, and expected Defendant to continue the relationship for the remaining four options. (Doc. 47-5[1].) Because the Plaintiff and Defendant had a relationship lasting almost six years, Defendant had previously utilized a part-time, contracted hygienist for 20 years, and Plaintiff expected the contract to be renewed, this weighs in favor of employee status.

However, the weight of this factor is diminished by the nature of the parties' relationship. *See Hunt*, 297 F.3d at 738. Unlike in this case, at least one of the plaintiffs in *Hunt* was a previous DOC employee and was paid directly by the DOC. *Id.* In *Hunt*, the plaintiffs not only had a longstanding relationship with defendant, but at least one plaintiff also had relationship characterized by employee status. *Id.* In contrast, the Plaintiff here was always considered an independent contractor. Therefore, the weight of this factor is diminished, and it weighs slightly in favor of employee status.

### (6) Hiring Party's Right to Assign Additional Projects

Plaintiff was required to perform a list of duties indicated in the Compass contract. (Doc. 40-3, p. 1.) The Compass contract also states: "This list is not all inclusive." (*Id.*) This suggests Defendant was able to assign additional projects to Plaintiff. However, the facts suggest that no additional duties or projects were ever assigned to Plaintiff. (Doc. 40, p. 15.) Therefore, this factor holds neutral weight.

### (7) Worker's Discretion over When and How Long to Work

The contract shows that Defendant had discretion to control Plaintiff's work schedule and the scheduling of sessions with inmates. (Doc. 40-3 at 4.) Defendant points out Plaintiff was able to set her own hours, work a second job as a dental hygienist, and that she was never assigned overtime work. (Doc. 40, p. 13.) Regarding the hours worked, the record indicates the number of hours was set by the contract. (Doc. 40-3.) While Plaintiff points out that Defendant's

---

[1] Plaintiff's exhibits appear to be mis-numbered. For instance, Doc. 47-5 is labeled as Ex. 6. For purposes of this order, the Court will label the exhibits as they appear on ECF, and not as the parties have labeled.

receptionist scheduled Plaintiff's hours and the inmates she treated (Doc., 47-1), Defendant was required to schedule Plaintiff's patients because the patients were prisoners at the medical prison. Further, the *Alexander* court weighed having other employment in favor of independent contractor status. 768 F.3d at 762. Plaintiff had the ability to choose her work days and work a second job. Therefore, this factor weighs in favor of independent contractor status.

### (8) Payment

Plaintiff was paid by Compass, not Defendant. This factor weighs in favor of independent contractor status. However, the weight of this factor is diminished because Defendant did not pay Compass a fixed rate for the completion of a discrete project. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215-16 (3rd Cir. 2015) (finding Defendant indirectly paid employees' wages where, "rather than paying Labor Ready a fixed rate for the completion of a discrete project, a method by which independent contractors are often compensated,... [Defendant] paid Labor Ready for each hour worked by each individual temporary employee at an agreed-upon hourly rate.") (citations omitted); *see also Hunt*, 297 F.3d at 738 (noting the independent contractor "paid plaintiffs, but was reimbursed by [defendant]"). Here, similar to the facts in *Faush* and *Hunt*, Defendant paid Compass, according to an agreed-upon hourly rate, for each hour Plaintiff worked. (See Doc. 47-6.) Still, this factor weighs in favor of independent contractor status.

### (9) The Worker's Role in Hiring and Paying Assistants

The parties do not dispute the fact Plaintiff had no role in hiring or paying assistants. This factor weighs slightly in favor of employee status. *See Alexander,* 768, F.3d 756, 762 (8th Cir. 2014) (finding the fact Plaintiff could and did hire his own assistants favored independent contractor status).

### (10) Whether the Work Is Part of the Regular Business of the Hiring Party

The USMCFP is a medical prison that provides dental care as well as other medical services. Prior to the non-renewal of the Compass contract, Defendant had maintained a part-time contracted hygienist for the past 20 years. (Doc. 47-1.) In January 2014, Defendant decided to hire a full-time government hygienist. (*Id.*) Because Defendant maintained a part-time contracted hygienist for more than 20 years, and more recently hired a full-time hygienist, providing hygienist services as part of dental care was and is part of Defendant's regular business. Defendant argues that the Prison provided a whole range of medical care, including dental services to inmates, and that some of those providers were independent contractors and some were employees. However,

Defendant cites to no evidence to support this conclusion. Further, this factor merely asks whether the work done was in the regular course of business, not whether other persons at a particular facility were employees or independent contractors. The record is clear; dental care was a part of the regular business of the USMCFP, and therefore, this factor weighs in favor of employee status.

### (11) Whether the Hiring Party Is in Business

Defendant is a governmental entity who is not in private "business." However, governmental entities are equally capable of hiring both employees and independent contractors. *See Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, EEOC Notice No. 915.002 (Dec. 3, 1997), https://www.eeoc.gov/policy/docs/conting.html (stating that the "principles regarding joint employer coverage are the same" for private entities and federal agencies). Plaintiff argues this factor weighs in favor of employee status because Plaintiff did not own a business. (Doc. 47, p. 19.) However, this factor considers whether the hiring party is in business, not the Plaintiff. On the current record, this factor holds neutral weight.

### (12) Benefits

Plaintiff did not receive any retirement or healthcare benefits from Defendant. However, Plaintiff was paid an additional $3.81 an hour for health and wellness benefits. Like method of payment, this factor's weight is partly diminished by the fact Plaintiff's benefits were being indirectly paid by Defendant because Defendant paid Compass on a per hour basis for the hours Plaintiff worked. Still, this factor weighs slightly in favor of independent contractor status. *See Alexander*, 768 F.3d at 762 (holding that the lack of benefits weighed in favor of independent contractor status); *Glascock*, 698 F.3d at 699 (same).

### (13) Tax Treatment

The record indicates Compass withheld taxes, Social Security, and Medicare from Plaintiff's paycheck, not Defendant. (Doc. 40-5.) While Plaintiff points out Plaintiff did not pay self-employment taxes, normally associated with independent contractor status, it is undisputed Plaintiff was an employee of Compass. Thus, self-employment taxes would not be expected. Therefore, this factor weighs in favor of independent contractor status.

### (14) Economic Realities

The fact that the Compass contract states that it creates an independent contractor relationship and not an employer-employee relationship weighs heavily in favor of independent

contractor status. *Glascock*, 698 F.3d at 699. The fact that Defendant was not the one who granted leave or vacation also weighs in favor of independent contractor status. *Id.*; *Schwieger*, 207 F.3d at 486. Additionally, the method of termination weighs in favor of independent contractor status. Although the Compass contract does not state that it is terminable at will, it does allow Defendant unilateral discretion not to renew after the first one-year term. *See Glascock*, 698 F.3d at 699 (holding that the at-will nature of employment weighed in favor of independent contractor status); *Schwieger*, 207 F.3d at 486 (same). Further, Plaintiff was able to work simultaneously at another dental clinic. *See Alexander*, 768 F.3d at 762 (holding that the fact that a pathologist held other medical employment weighed in favor of independent contractor status because it demonstrated his freedom of choice regarding his work). Moreover, any problem that arose with the hygienist was to be resolved through Compass, not the Defendant. (Doc. 62, Ex. 4.) As a whole, the economic realities weigh in favor of independent contractor status and not employee status.

Overall, while some factors weigh in favor of employee status, the weight of the factors establish Plaintiff was an independent contractor, and not an employee, for the Defendant at all relevant times she worked at USMCFP. Defendant's motion on this issue (Doc. 39) will be granted. Plaintiff's motion on this issue (Doc. 53) will be denied.

## IV. Conclusion

Accordingly, and after careful consideration, Defendant's Motion for Summary Judgment (Docs. 39) is **GRANTED**. Plaintiff's Motion for Summary Judgment (Doc. 53) is **DENIED**. Specifically, the Court finds Plaintiff to have been an independent contractor, and not an employee, for Defendant. As such, Plaintiff lacks standing to sue under Title VII. Therefore, Plaintiffs claims are **DISMISSED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 11, 2019